## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA
## CIVIL DIVISION

| | | |
|---|---|---|
| DAVID PASTUSZEK and | : | |
| BRENDA PASTUSZEK, h/w | : | JURY TRIAL DEMANDED |
| | : | |
| Plaintiffs | : | |
| vs. | : | |
| | : | CIVIL ACTION NO.  4:14-cv-01051-MEM |
| ELECTROLUX HOME PRODUCTS, INC. | : | |
| and | : | |
| ELECTROLUX NORTH AMERICA | : | |
| Defendants | : | |

## ORDER

AND NOW, this _____ day of _____, 2016, upon consideration of

Plaintiffs David and Brenda Pastuszek's Motion *in Limine* to Preclude Defendants from

Introducing Evidence of David Pastuszek's Criminal History and any response thereto, it is

hereby **ORDERED** and **DECREED** that said Motion is **GRANTED**.

Defendants Electrolux Home Products, Inc. and Electrolux North America are hereby

precluded from introducing any evidence of Plaintiff David Pastuszek's past criminal history and

criminal convictions.

BY THE COURT,

_____
THE HONORABLE MALACHY E. MANNION

**IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA
CIVIL DIVISION**

| | | |
|---|---|---|
| DAVID PASTUSZEK and | : | |
| BRENDA PASTUSZEK, h/w | : | JURY TRIAL DEMANDED |
| | : | |
| Plaintiffs | : | |
| vs. | : | |
| | : | CIVIL ACTION NO.  4:14-cv-01051-MEM |
| ELECTROLUX HOME PRODUCTS, INC. | : | |
| and | : | |
| ELECTROLUX NORTH AMERICA | : | |
| Defendants | : | |

## PLAINTIFFS' MOTION IN LIMINE TO PRECLUDE DEFENDANTS FROM INTRODUCING EVIDENCE OF DAVID PASTUSZEK'S CRIMINAL HISTORY

Plaintiffs David and Brenda Pastuszek, by and through their counsel Galfand Berger,

LLP, hereby file this Motion *in Limine* to Preclude Defendants from Introducing Evidence of

David Pastuszek's Criminal History, as such evidence is prohibited by Federal Rule of Evidence

609(b). In support thereof, Plaintiff relies on the attached Memorandum of Law.

Respectfully Submitted,

GALFAND BERGER, LLP

BY: _____
RICHARD M. JUREWICZ, ESQUIRE
Attorney for Plaintiff
I.D. No. 39436
1835 Market Street, Suite 2710
Philadelphia, Pa.  19103
(215) 665-1600
rjurewicz@galfandberger.com

## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA
## CIVIL DIVISION

| | | |
|---|---|---|
| DAVID PASTUSZEK and | : | |
| BRENDA PASTUSZEK, h/w | : | JURY TRIAL DEMANDED |
| | : | |
| Plaintiffs | : | |
| vs. | : | |
| | : | CIVIL ACTION NO. 4:14-cv-01051-MEM |
| ELECTROLUX HOME PRODUCTS, INC. | : | |
| and | : | |
| ELECTROLUX NORTH AMERICA | : | |
| Defendants | : | |

## PLAINTIFFS' BRIEF (MEMORANDUM OF LAW) IN SUPPORT OF THEIR MOTION IN LIMINE TO PRECLUDE DEFENDANTS FROM INTRODUCING EVIDENCE OF DAVID PASTUSZEK'S CRIMINAL HISTORY

### I.    MATTER BEFORE THE COURT

Before this Honorable Court is Plaintiffs David and Brenda Pastuszek's Motion *in Limine* to Preclude Defendants Electrolux Home Products, Inc. and Electrolux North America from Introducing Evidence of David Pastuszek's Criminal History. Plaintiff David Pastuszek pled guilty to burglary more than 27 years ago (1989) and was released from prison on November 7, 1994. Federal Rule of Evidence 609(b) clearly precludes evidence of criminal convictions being used for impeachment where the individual was released from confinement over ten years earlier unless "its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect." F.R.E. 609(b)(1). Plaintiff David Pastuszek's criminal record is completely devoid of probative value. It is the exact type of conviction designed to be precluded by Federal Rule of Evidence 609(b). Allowing Defendants to introduce such evidence, as their counsel has expressed an intent to do, would be extremely prejudicial. It is obvious why defense counsel wants to introduce this evidence: it is a calculated strategy to inflame the jury by labeling

1

Plaintiff a "convict." Defendants are attempting to show that Plaintiff should not be viewed as a

likable person because he has not made criminal transgressions in his distant past. For these

reasons, Plaintiffs respectfully request that this Honorable Court preclude evidence of Plaintiff

David Pastuszek's criminal convictions.

## II.    QUESTIONS PRESENTED

Should this Honorable Court preclude Defendant from introducing evidence of Plaintiff's criminal convictions where it has been over 21 years since Plaintiff's release from confinement and where the criminal conviction has absolutely no probative value to this matter?

Suggested Answer: YES.

## III.    FACTS

This matter arises from an August 27, 2013 accident in which Plaintiff David Pastuszek,

a local truck driver, was making his first stop of the day and unloading a truck that indisputably

had been improperly and negligently loaded by Defendants in such a manner that a commercial

washer fell and struck Plaintiff, causing him to fall to the ground. Plaintiff David Pastuszek, who

was acting in the course and scope of his employment with J.B. Hunt Transport, Inc., had no role

whatsoever in loading or securing the load in the trailer, as it was sealed when he received it to

transport to various local retailers. The Electrolux Defendants were solely responsible for

loading the appliances and equipment into the truck driven by Plaintiff. A representative of

Defendants admitted that the trailer was improperly loaded and secured. (Bzura Dep., excerpts

attached as Exhibit A, at 77-79). Plaintiff's accident was investigated by his employer J.B. Hunt,

which concluded that the accident was in no way Plaintiff's fault, but rather that the trailer had

been loaded improperly by Defendant's employees. (Exhibit B). As a result of his accident,

Plaintiff David Pastuszek suffered injuries to his lower back, including herniated discs in his

lumbar spine and severe pain and suffering.

Having no connection at all to the above facts of this accident, Plaintiff David Pastuszek

pled guilty to burglary and receiving stolen property in 1989. Plaintiff testified that he was

convicted for receiving stolen property and burglary in the late 1980s and served "approximately

five years, eight years, something like that" in prison. (David Pastuszek Dep., excerpts attached

as Exhibit C, at 22). In fact, he was sentenced to serve his sentence for burglary and receiving

stolen property on February 28, 1989 and was **released from prison on November 7, 1994.**

(Exhibit D). Plaintiff had previously pled guilty to burglary in 1985 and was released from prison

after only five months in September 1985. (Exhibit E). Trial in this matter is scheduled to begin

June 20, 2016, a total of 21 years and 7 months since David Pastuszek was released from

incarceration.

Since 1989, Plaintiff has had no other criminal convictions or arrests.[1] By the time

Plaintiff testifies at court, it will have been nearly 22 years since Plaintiff was released from

confinement. There is absolutely no evidence of record that ties Plaintiff's guilty plea of burglary

and receiving stolen property to any of the facts of this case: there is no probative value

whatsoever. Nevertheless, counsel for Defendant has expressed intent to introduce this improper

evidence at trial.

## IV.    ARGUMENT

Plaintiff David Pastuszek was released from prison well over twenty years ago as a result

of his guilty pleas to burglary in 1989 and 1985, and those guilty pleas have absolutely no

---

[1] At Plaintiff's deposition, defense counsel inquired about a citation for harassment in 2012. Plaintiff was not arrested or convicted and the citation was withdrawn. Plaintiff described the incident as follows: "We were with my sister-in-law. We went up to move her daughter's stuff out of her house because her and her husband were splitting up. And he went to hit her and I stepped in between and he said I threatened him. That was dismissed. It never even went to court." (Exhibit C at 22:23–23:8). To the extent Defendants may somehow try to introduce this incident at trial, Plaintiffs move to incorporate the arguments contained herein to exclude any mention of the 2012 withdrawn harassment citation. This incident does not fall under F.R.E. 609(a) because there was no conviction. It also must be precluded under F.R.E. 608, particularly because it is clearly not probative of truthfulness or untruthfulness. That incident is irrelevant and fails the balancing test of F.R.E. 403.

probative value in the present personal injury litigation for an accident that occurred while Plaintiff was at work in 2013 unloading a trailer improperly packaged by Defendants. Federal Rule of Evidence 609(b) provides that if more than 10 years have passed since a witness's conviction or release from confinement, evidence of that conviction is admissible "**only if** its probative value, supported by specific facts and circumstances, **substantially outweighs** its prejudicial effect." F.R.E. 609(b)(1). The Advisory Committee Notes explain the intent of this rule:

> It is intended that convictions over 10 years old will be admitted **very rarely and only in exceptional circumstances.** The rules provide that the decision be supported by specific facts and circumstances thus **requiring the court to make specific findings on the record as to the particular facts and circumstances it has considered in determining that the probative value** of the conviction substantially outweighs its prejudicial impact.

Notes of Committee on the Judiciary, Senate Report No. 93–1277.

Rule 609(b) applies because Plaintiff was released from prison more than 10 years ago. "In calculating the ten-year period, 'release from confinement' does 'not include any period of probation or parole.'" Wink v. Ott, 2012 U.S. Dist. LEXIS 76261, *5 (M.D.Pa. 2012) (quoting 6 Weinstein's Federal Evidence § 609.07[3]). Circuit courts around the country have held that the ten year period in Rule 609 begins to run from the date the individual is released from prison. See United States v. Rogers, 542 F.3d 197, 198 (7th Cir. 2008) ("We conclude that probation does not constitute 'confinement' within the meaning of Rule 609(b)"); United States v. Stoltz, 683 F.3d 934, 939 (8th Cir. 2012); United States v. Daniel, 957 F.2d 162, 168 n.3 (5th Cir. 1992). Indeed, the Eastern District of Pennsylvania has declared, "[W]e are satisfied that the Third Circuit will join the other circuit courts in holding that the ten-year time period contained in Rule 609(b) does not include periods of probation." United States v. Slade, 2013 U.S. Dist.

LEXIS 157295, *13 (E.D.Pa. 2013). As Plaintiff David Pastuszek was released from prison more than **twenty** years ago, Rule 609(b) applies.

Rule 609(b) creates a rebuttable presumption that convictions over ten years old are more prejudicial than probative. United States v. Ollie, 996 F.Supp.2d 351, 353 (W.D.Pa. 2014). In Ollie, the government wanted to introduce evidence of a witness's convictions of forgery and theft by deception that occurred over 25 years earlier in 1988. The Western District of Pennsylvania found there to be no probative value in these convictions, even though those crimes were the type of convictions that may be probative of truthfulness as *crimen falsi*. Id. Here, Plaintiff's convictions are even less probative as burglary is not considered a *crimen falsi* by the Third Circuit. Jackson v. City of Pittsburgh, 2010 U.S. Dist. LEXIS 60023 (W.D. Pa. 2010) (citing Walker v. Horn, 385 F.3d 321, 333 (3d Cir. 2004)). Even if it were, the guilty plea entered by Plaintiff in 1985 is not representative of his present character. The Advisory Committee specifically imposed the time restriction on use of convictions due to "practical considerations of fairness and relevancy [that demand] some boundary be recognized." F.R.E. 609, Advisory Committee Notes.

Defendants have not and cannot point to any probative value of Plaintiff David Pastuszek's guilty plea to burglary over 25 years ago. This Court would be required to make specific findings on the record as to the particular facts and circumstances it has considered in determining that probative value. F.R.E. 609(b)(1). Defendants have presented no facts or circumstances that could possibly render a decades-old conviction for burglary substantially more probative than it is prejudicial. Certainly, this is not one of the "exceptional circumstances" in which a conviction older than ten years should be admitted. Allowing Defendants to question Plaintiff and introduce evidence concerning his prior conviction would unjustly cast Plaintiff as a

criminal and impact the jury's perception of him. A conviction for burglary for which he was released from prison over 21 years ago has absolutely no bearing on his 2013 work accident or his ability to credibly convey how the accident happened and how it affected his life. This is especially true where Plaintiff has not had any other criminal history since his release from prison in 1994. As a result, it would be incredibly prejudicial to Plaintiffs to allow Defendants to introduce any evidence whatsoever of David Pastuszek's criminal history. Defendants cannot be allowed to drudge up old mistakes in a misplaced and improper effort to question David Pastuszek's credibility. The Federal Rules of Evidence explicitly preclude them from doing so.

## V.    RELIEF REQUESTED

For the reasons set forth at length above, Plaintiffs respectfully request that this Honorable Court preclude Defendants from introducing any evidence of Plaintiff David Pastuszek's criminal history, as such evidence is barred by the Federal Rules of Evidence and would be highly prejudicial with absolutely no probative value.

Respectfully Submitted,

GALFAND BERGER, LLP

BY: _____

RICHARD M. JUREWICZ, ESQUIRE
Attorney for Plaintiffs
I.D. No. 39436
1835 Market Street, Suite 2710
Philadelphia, Pa. 19103
(215) 665-1600
rjurewicz@galfandberger.com

6

**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**
**CIVIL DIVISION**

| | | |
|---|---|---|
| DAVID PASTUSZEK and | : | |
| BRENDA PASTUSZEK, h/w | : | JURY TRIAL DEMANDED |
| | : | |
| Plaintiffs | : | |
| vs. | : | |
| | : | CIVIL ACTION NO.  4:14-cv-01051-MEM |
| ELECTROLUX HOME PRODUCTS, INC. : | | |
| and | : | |
| ELECTROLUX NORTH AMERICA | : | |
| Defendants | : | |

## CERTIFICATE OF NONCONCURRENCE

I, Richard M. Jurewicz, Esquire, certify that I requested counsel for Defendants'

concurrence in Plaintiffs David and Brenda Pastuszek's Motion *in Limine* to Preclude

Defendants from Introducing Evidence of David Pastuszek's Criminal History pursuant to LR

7.1 and the parties could not agree.

GALFAND BERGER, LLP

BY: _____
RICHARD M. JUREWICZ, ESQUIRE
Attorney for Plaintiff
I.D. No. 39436
1835 Market Street, Suite 2710
Philadelphia, Pa. 19103
(215) 665-1600
rjurewicz@galfandberger.com

**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**
**CIVIL DIVISION**

| | | |
|---|---|---|
| DAVID PASTUSZEK and | : | |
| BRENDA PASTUSZEK, h/w | : | JURY TRIAL DEMANDED |
| | : | |
| Plaintiffs | : | |
| vs. | : | |
| | : | CIVIL ACTION NO.  4:14-cv-01051-MEM |
| ELECTROLUX HOME PRODUCTS, INC. | : | |
| and | : | |
| ELECTROLUX NORTH AMERICA | : | |
| Defendants | : | |

## CERTIFICATE OF SERVICE

I, Richard M. Jurewicz, Esquire, hereby certify that a true and correct copy of Plaintiffs

David and Brenda Pastuszek's Motion *in Limine* to Preclude Defendants from Introducing

Evidence of David Pastuszek's Criminal History was sent to counsel below via email:

Frederick W. Bode, III, Esquire
Bryon R. Kaster, Esquire
Christine L. Line, Esquire
DICKIE, McCAMEY & CHILCOTE, P.C.
425 North 21st Street, Suite 302
Camp Hill, Pa.  17011-2223
*Attorneys for Defendants, Electrolux Home Products, Inc. and Electrolux North America*
fbode@dmclaw.com
bkaster@dmclaw.com
cline@dmclaw.com

GALFAND BERGER, LLP

BY: _____
RICHARD M. JUREWICZ, ESQUIRE
Attorney for Plaintiffs
1835 Market Street, Suite 2710
Philadelphia, Pa.  19103
(215) 665-1600
I.D. No. 39436
rjurewicz@galfandberger.com

# EXHIBIT "A"

MARTIN C. BZURA
PASTUSZEK v. ELECTROLUX HOME PRODUCTS

May 28, 2015
1–4

**Page 1**

```
 1          IN THE UNITED STATES DISTRICT COURT
 2        FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
 3    ---------------------------x
      DAVID PASTUSZEK & BRENDA   :   NO. 4:14-CV-01051-MEM
 4    PASTUSZEK, h/w,            :
           Plaintiff(s),        :
 5                              :
           v.                   :
 6                              :
      ELECTROLUX HOME PRODUCTS,  :
 7    INC., et al.,             :
           Defendant(s).        :
 8    ---------------------------x
 9                   -  -  -
10                 May 28, 2015
11                   -  -  -
12         Oral deposition of MARTIN C. BZURA, held
      at the law offices of Michael J. O'Connor, 608
13    W. Oak Street, Frackville, Pa., 17921, beginning
      at 11:50 a.m., on the above date, before Denise
14    D. Bach, a Registered Professional Reporter and
15    Notary Public.
16
17
18
19
             ESQUIRE DEPOSITION SOLUTIONS
20                 1835 Market Street
                     Suite 2600
21          Philadelphia, Pennsylvania 19103
                   (215) 988-9191
22
23
24
```

**Page 2**

```
 1    APPEARANCES:
 2
          GALFAND BERGER, LLP
 3        BY: RICHARD M. JUREWICZ, ESQUIRE
          Suite 2710
 4        1835 Market Street
          Philadelphia, PA 19103
 5        215.665.1600
          rjurewicz@galfandberger.com
 6        --Representing the Plaintiff(s)
 7
 8        DICKIE McCAMEY & CHILCOTE, P.C.
          BY: CHRISTINE L. LINE, ESQUIRE
 9        Plaza 21, Suite 302
          425 North 21st Street
10        Camp Hill, PA 17011
          717.731.4800
11        cline@dmclaw.com
          --Representing the Defendant(s)
12
13
14
15
16
17
18
19
20
21
22
23
24
```

**Page 3**

```
 1               I N D E X
 2    WITNESS                         PAGE
      MARTIN C. BZURA
 3    By Mr. Jurewicz                  5
      BY Ms. Line                     81
 4
 5          E X H I B I T S
 6    MARKED      DESCRIPTION         PAGE
 7        (No Exhibits Were Marked.)
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
```

**Page 4**

```
 1         DEPOSITION SUPPORT INDEX
 2
 3     DIRECTION TO WITNESS NOT TO ANSWER
 4    Page  Line      Page  Line      Page  Line
 5      (None)
 6
 7
 8     REQUEST FOR PRODUCTION OF DOCUMENTS
 9    Page  Line      Page  Line      Page  Line
10      (None)
11
12
13              STIPULATIONS
14    Page  Line      Page  Line      Page  Line
15      5      2
16
17
18             QUESTIONS MARKED
19    Page  Line      Page  Line      Page  Line
20      (None)
21
22
23
24
```



Page 77

1  Mr. Pastuszek was delivering for his drop-offs
2  had been improperly loaded?
3      A.     No.
4      Q.     Did Vince Messina ever tell you
5  that the trailer was improperly loaded, the one
6  that was involved in Mr. Pastuszek's accident?
7      A.     Yeah.
8      Q.     When did he tell you that?
9      A.     I can't remember exactly when.
10     Q.     What did he tell you?
11     A.     That it was improperly loaded and
12  Dave got hurt.
13     Q.     Did he tell you how it was
14  improperly loaded?
15     A.     No; because I will have to step in
16  here in just a minute.  It was later that day
17  that that trailer did get returned.  Okay.  And
18  they called the ops clerk.  The ops clerk told
19  me and then Dave Bayer came out, we went over,
20  opened the door, looked at it.  At that point,
21  there was stuff laying all over the floor that
22  wasn't secured.  But I can't say that didn't
23  happen in transit bringing it back, we just saw
24  there was, you know, stuff left.

Page 78

1          That trailer had to get offloaded,
2  but, like I said, that was late afternoon, that
3  was maybe like 2 o'clock and we were going at
4  2:30.  But I had seen the trailer that got
5  returned, and the load, it was laying all over
6  the place, but it wasn't secure.  And I want to
7  say, if I was a guessing man, it was like
8  halfway unloaded.
9          MS. LINE:  Objection.
10         THE WITNESS:  And that's all I
11  seen.
12         MS. LINE:  Can we establish that
13  he is only to answer a question if he knows the
14  answer and not to give a speculative or a
15  guessing answer?
16         MR. JUREWICZ:  If you want to
17  clean that up with him.  I'm perfectly happy
18  with what he has to say.
19         I think all objections except as
20  to the form of the question are reserved.
21  BY MR. JUREWICZ:
22     Q.     What did Vince tell you, Messina
23  that is, as to why in his belief he thought the
24  trailer that was loaded for Dave Pastuszek to

Page 79

1  deliver had been improperly loaded?
2      A.     Because something fell on Dave.
3      Q.     And is something ordinarily not
4  supposed to fall if a trailer is loaded
5  properly?
6      A.     Correct.
7      Q.     And the reason for that is either
8  the load's going to be secured by blocking or
9  it's going to be shrink wrapped if it's a
10  multi-load --
11     A.     Stop.
12     Q.     -- or dunnage, something to
13  prevent the second, third and load closest to
14  the bulkhead to shift or move, right?
15     A.     Correct.
16     Q.     When you opened up -- when you saw
17  the trailer that was brought back, did you see
18  any shrink wrapping that was laying around?
19     A.     No.
20     Q.     All right.  Did you see anything
21  in the trailer that would indicate that that
22  second load from the bulkhead had been shrunk
23  wrapped?
24     A.     No, I can't say I did.

Page 80

1      Q.     Did you see any dunnage in there
2  that would indicate that there was -- that that
3  load had been secured?
4      A.     No.
5      Q.     Did you see any, you know --  do
6  you know what brace poles are?
7      A.     Yes.
8      Q.     Did you see any brace poles
9  securing the load?
10     A.     No.
11     Q.     In the past when your men have
12  loaded trailers, have they used dunnage between,
13  let's say, a first load and second load or
14  second load and third load?
15     A.     If need be.
16     Q.     And have they used shrink wrap
17  between the first load and second load or third
18  load and fourth load?
19     A.     Yes, they did.
20     Q.     And have they used jam poles or
21  braces between the first load, second load or
22  second load and third load, if needed?
23     A.     Yes, they did.
24     Q.     And the decision to use dunnage,



# EXHIBIT "B"

# Injury Investigation Report

| | | | |
|---|---|---|---|
| Alpha Code:   PASD6 | Board Code:   3S@ | Name:   DAVID PASTUSZEK | |
| Hire Date:   11/01/2010 | City: | State: | |

| | | | |
|---|---|---|---|
| Team Leader/OM: | Mike Forrest/Corporate/JBHunt | Safety Manager/ ARM: | Shawn Would |
| Fleet/Project Manager: | Rich Hostetler | Event Number: | 373641 |
| Truck Director/VP: | Bryan Schwenk/Corporate/JBHunt | Project: | |

| | | |
|---|---|---|
| Date of Injury: | 27 AUG 2013 | Date Reported:   27 AUG 2013 |
| Type of Injury (ie Lumbar Strain, Laceration): | DRIVER HAS SEVERE PAIN IN HIS BACK, RIBS, AND HEAD | |
| Body part affected: | BACK, RIBS, AND HEAD | |
| Initial Treatment: | Doctors Appointment | |
| How did injury occur? | DRIVER WAS UNLOADING APPLIANCES FOR 1ST STOP WHEN DRIVER WENT TO GRAB LAST PIECE A WASHING MACHING AND 2 GAS RANGES FELL ON THE DRIVER | |
| What caused injury (i.e., Slippery surface, faulty equipment, etc.) | AFTER TALKING WITH DRIVER AND WAREHOUSE SUPERVISOR AT RDC  THIS WAS A DIRECT RESULT OF IMPROPER LOADING BY SHIPPER.  THERE IS NO WAY TO KNOW WHEN A BOX IS GOING TO COLLAPSE FROM WEIGHT AND FALL ON DRIVER!  THIS CAN HAPPEN AT ANY TIME WITH NO WARNING"! | |
| Activity at time of injury? | UNLOADING | |
| Factors that contributed to the incident: | IMPROPER LOADING BY SHIPPER AS BOX HAD CRUSH DAMAGE THAT IN TURN LED LED TO APPLIANCES FALLING ON DRIVER AFTER HE MOVED REFRIGERATOR WHICH WAS HOLD THEM UP FROM FALLING | |
| Witness Name: | N/A | |
| Account of Incident: | N/A | |
| Witness Name: | N/A | |
| Account of Incident: | N/A | |
| Was proper equipment used for task? | ● Yes ○ No | |
| Explain | | |
| Was personal protective equipment used? | ● Yes ○ No | |
| Explain | | |
| Were appropriate safeguards in place? | ● Yes ○ No | |
| Explain | | |
| Is there a JSA for the activity/task that was performed? | ● Yes ○ No | |
| Explain | | |
| Were JSA steps being followed at the time of the injury? | ● Yes ○ No | |
| Explain | | |
| Had the employee been trained on the JSA and is it documented. | ● Yes ○ No | |
| Explain | | |
| Corrective Actions JSA Training? | ○ Yes ● No | |
| Prevention Plan | NOTHING DRIVER COULD HAVE DONE DIFFERENTLY BECAUSE NOTHING WAS LEANING FORWARD OR OBVIOUSLY SHOWING IT WOULD FALL HAD HE REMOVED REFRIGERATOR | |

| | Signature | Date |
|---|---|---|
| Supervisor | | |

PASDC   David Pastuszek          5 Sep 13

# EXHIBIT "C"

```
0001
 1              IN THE UNITED STATES DISTRICT COURT
                FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
 2
        - - - - - - - - - - - - - - - -
 3    DAVID PASTUSZEK AND BRENDA
      PASTUSZEK,
 4                          Plaintiffs
 5              vs.                      No. 4:14-CV-1051
 6    ELECTROLUX HOME PRODUCTS,
      INC. AND ELECTROLUX NORTH
 7    AMERICA,
 8                          Defendants    JURY TRIAL DEMANDED
        - - - - - - - - - - - - - - -/
 9
10
11           videotaped
             Deposition of:  DAVID PASTUSZEK
12
             Taken by     :  Defendants
13
             Date         :  December 22, 2014; 10:04 a.m.
14
             Place        :  Michael J. O'Connor & Associates
15                            608 West Oak Street
                              Frackville, Pennsylvania
16
             Before       :  Susan D. Kashmere, RPR
17                            Notary Public
                                - and -
18                            Drew Halton, Key Legal video
19   APPEARANCES:
20   GALFAND BERGER, LLP
     By:  RICHARD JUREWICZ, ESQ.
21        Appearing on behalf of the Plaintiff
22   DICKIE, MCCAMEY & CHILCOTE, P.C.
     By:  AARON S. JAYMAN, ESQ.
23        Appearing on behalf of the Defendant
24   ALSO PRESENT:
25   BRENDA L. PASTUSZEK
```

0020
```
 1        Q.   And then after you left the company -- that
 2   company, where did you go?  Was that next J.B. Hunt?
 3        A.   J.B. Hunt, yeah.
 4        Q.   And was that in 2010?
 5        A.   Ten.
 6        Q.   And what did you do -- how long were you
 7   employed at J.B. Hunt?
 8        A.   From, what was it, November, 2010 till present.
 9   I'm still employed by them.
10        Q.   Were you ever discharged from J.B. Hunt?
11        A.   No.
12        Q.   Can you tell me what types of loads you've
13   hauled in the past?
14        A.   What do you mean by the past?
15        Q.   Through your career.  You talked about
16   appliances you've hauled, some water.  Anything else?
17        A.   I did electronics, hospital equipment.  I've
18   done trade shows.  I've done cars, motorcycles, general
19   freight.  I mean, whatever United had is what we hauled.
20        Q.   Have you ever been in the military?
21        A.   No.
22        Q.   Have you ever been convicted or plead guilty to
23   a crime?
24        A.   Yep.
25        Q.   And what was that for?
```

0021
```
 1        A.   Is that relevant to this?
 2             MR. JUREWICZ:  Well, for discovery purposes you
 3   can answer the question; however, if the crime involves
 4   anything other than dishonesty or falsehood and is more
 5   than ten years old -- or even if it involves dishonesty
 6   or falsehood and is longer than ten years, it's not going
 7   to see the daylight of trial.  So you can answer it.
 8             MR. JAYMAN:  That's not necessarily true.  If
 9   it's more than ten years the judge will determine the
10   weight of it and then let it --
11             MR. JUREWICZ:  I think you need to consult the
12   federal rules of procedure, the federal rules of evidence
13   on that issue.
14             MR. JAYMAN:  Well, we'll bring it up with the
15   Court.
16             MR. JUREWICZ:  It's not coming in, but you can
17   answer it anyway because you know about it.
18        A.   Yes.
19   BY MR. JAYMAN:
20        Q.   Tell me what you were arrested for.
21        A.   Receiving stolen property.
22        Q.   When was that?
23        A.   I don't recall.  Late 1980, 19 something.
24        Q.   Were you also arrested for burglary?
25        A.   Yeah, I believe so.  It all stemmed from the
```

```
0022
 1    same stuff.
 2          Q.   Same incident?
 3          A.   The same thing.  They had a bunch of stuff
 4    piled together.
 5          Q.   And what court was that in?
 6          A.   I don't know.  They had Northumberland County
 7    and Cumberland County I think.
 8          Q.   Did you spend some time in jail?
 9          A.   Yep.
10          Q.   what jail were you in?
11          A.   I was in Frackville and Camp Hill.
12          Q.   How much time did you serve?
13          A.   Approximately five years, eight years,
14    something like that.
15          Q.   were you also under the influence of
16    prescription drugs at that time?
17          A.   No.
18          Q.   Have you ever been arrested or convicted in
19    Montgomery County?
20          A.   No.
21          Q.   How about Schuylkill County?
22          A.   Not that I recall.
23          Q.   were you arrested for harassment in 2012?
24          A.   was I arrested for it?  I got a citation for it
25    I think.
```

```
0023
 1          Q.   was that in Northumberland County?
 2          A.   Yep.
 3          Q.   what were the circumstances surrounding that?
 4          A.   we were with my sister-in-law.  we went up to
 5    move her daughter's stuff out of her house because her|
 6    and her husband were splitting up.  And he went to hit
 7    her and I stepped in between and he said I threatened
 8    him.  That was dismissed.  It never even went to court.
 9          Q.   Okay.  Are you currently taking any
10    medications?
11          A.   Yes.
12          Q.   what do you take?
13          A.   Gabapentin, Tizanidine, Tramadol.
14          Q.   All right.  Let's slow down for my benefit and
15    the court reporter's benefit.  Let's go one at a time.
16               Gabapentin, I guess you don't know how to spell
17    that?
18          A.   No.
19          Q.   That's fine.  what do you take that for?
20          A.   I guess it's some kind of pain blocker.
21          Q.   what was the next prescription?
22          A.   Tizanidine I think it's called.
23          Q.   And what do you take the Tizanidine for?
24          A.   Pain.
25          Q.   what was the next medication?
```

# EXHIBIT "D"

# EXHIBIT "E"

SCHUYLKILL COUNTY, ss:
COMMONWEALTH
vs.

In the Court of Quarter Sessions of the Peace
of Schuylkill County

OTN #B 483561-1

.......................................................Term, 19 85... No......253.......

Defendant being ..................... Heard on a Guilty Plea...........................................................

OF ........................ Burglary; Criminal Trespass.......................................................................

NOW, ............................. September 3 ............................, 19 85.., the Court directs that

.......................................................................................................... pay the costs of

prosecution:

On a motion by Defense Attorney Warner to withdraw the defendant's plea of not guilty
and to enter a plea of guilty, the motion is allowed by the Court.

Burglary: It is the sentence of the Court that the defendant shall pay the costs of
prosecution and shall make restitution in an amount to be determined by the Adult
Probation Department. He shall undergo imprisonment in the Schuylkill County
Prison for a period of not less than 5 months nor more than 23 months, with credit
for time already served. Since he has already served his minimum sentence, he is
granted immediate parole under the supervision of the Schuylkill County Adult
Probation Department, subject to the usual terms and conditions of parole.

Criminal Trespass: Merges with the charge of Burglary.

By the Court:

Dolbin, J.      C.R.#3

COMM: Petrillo
DEFT: Warner
STENO: Petrick

Certified from Record

Mary C. Long
CLERK of COURTS       (jz)

OFFICE COPY